**Donna M. CAMPBELL, Ph.D., et al., Appellants,**

v.

**Linda J. JEFFRIES, et al., Respondents.**

**No. 53561.**

Missouri Court of Appeals, Eastern District, Division Three.

June 7, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1988.

William L. Webster, Atty. Gen., Jefferson City, Kevin B. Behrndt, Asst. Atty. Gen., St. Louis, for appellants.

Charles E. Kirksey, Jr., St. Louis, for respondents.

SMITH, Judge.

Appellant Campbell, the Executive Director of Hawthorn Children's Psychiatric Hospital, appeals from the action of Respondents, serving as the Missouri Personnel Advisory Board (PAB), in disapproving the termination of Melinda Turner and ordering Turner reinstated with back pay. The trial court affirmed the action of Respondents. We reverse.

Hawthorn Children's Psychiatric Hospital is a facility of the Missouri Department of Mental Health treating disturbed and dangerous juveniles. Turner was a graduate nurse employed at Hawthorn. On March 1, 1986, Turner was the charge nurse for the Older Adolescent Boys Unit. In that capacity she was responsible for overseeing the functioning of the entire unit. Certain procedures are established by the hospital when a suspicion arises that a child is about to "elope" (run away). These procedures are to be implemented upon even a rumor of possible elopement. Turner received information from another employee of the possible elopement of a potentially homicidal juvenile (M.K.) in her unit, who also posed dangers to himself. She did not implement the established procedures for elopement nor notify the physician responsible of the elopement rumors. Two days later M.K. eloped and was subsequently found near Chicago.

The Department of Mental Health Operating Regulation (DOR) 2.205 defines Class I neglect as the "failure of an employee to provide reasonable and necessary services to maintain the physical and mental health of any client when such failure presents either imminent danger to health, safety or welfare, or a substantial probability that death or physical injury would result." The DOR further provides that the facility "shall dismiss" any employee found guilty of Class I neglect. Following the procedures established in DOR 2.205, appellant convened a board of inquiry which found Turner to have failed to follow hospital procedures for potential elopement after being informed of possible elopement by M.K., a patient with a previous history of elopement. Upon the basis of the findings by the Board of Inquiry, appellant terminated Turner for Class I Neglect.

The PAB in its findings of fact found that Turner was advised of the potential elopement of M.K. It then found:

"7. When there is a rumor of elopement certain procedures are to be followed, e.g., the client is to be clad only in pajamas, his bed is to be moved out of his room and into the open area of the unit, and he is not allowed egress from the housing unit.

"8. The client, M.K., was a known elopement risk. He had eloped on prior occasions. His bed was in a position which could be observed from nurses station and he was, during most of Appellant's shift, asleep in his bed. The Appellant elected not to take elopement precautions as described. Appellant made a late entry in the progress notes describing the report made by her subordinate.

"9. The Board finds that the Appellant did not conceal evidence or rumor of potential elopement by a client and did exercise the judgment which was her prerogative in observing the client close-

ly and monitoring his conduct. The Board further finds that the Appellant did not perform an act of neglect of the proper care of a client."

Based upon these findings, the Board concluded that Appellant did not "willfully violate the lawful rules, regulations, or policies of the Appointing Authority and did not perform an act of client neglect and ... concludes that her dismissal was not for good cause." It also concluded her dismissal was not for "the good of the service."

To the extent that paragraph 9 is a finding of fact, it is at war with findings 7 and 8. It was not Turner's "prerogative" to exercise her "judgment" of observing and monitoring the patient rather than implementing the prescribed procedures of the hospital. On the record before it the Board found, and such finding was supported by evidence, that Turner was advised of M.K.'s possible elopement, that when such information is received certain procedures are required, and that Turner did not implement the required procedures. These procedures are established by the hospital to protect the health and safety of its patients and the public generally. Turner was in violation of those procedures established by her employer. M.K. was a known elopement risk and a potential threat to himself and others. In failing to implement the elopement procedures, Turner failed "to provide reasonable and necessary services to maintain the physical and mental health of [a] client when such failure presents imminent danger to health, safety or welfare or a substantial probability that death or physical injury would result." By definition that is Class I Neglect and the prescribed discipline is dismissal.

■ Sec. 36.390.5, RSMo 1986, provides that appeal may be taken to the PAB by an employee who is dismissed upon that employee setting forth her reasons for claiming that the dismissal was for "political, religious, or racial reasons, or not for the good of the service." No political, religious or racial basis for the dismissal were identified by Turner or by the PAB. Nor did Turner or the PAB identify any reason why Turner's dismissal was not for the "good of the service." We are unable to interpret that phrase as extending to the PAB a discretionary authority to override the judgment of the appointing authority.

■ Respondent relies upon *Twiehaus v. Watkins*, 730 S.W.2d 298 (Mo.App.1987) as rejecting dismissal for failure of an employee to take action based upon rumor. That case is not applicable. There the employee was required to report known or suspected abuse. The court held that the Board concluded that the information possessed by the employee did not rise to the level of knowledge or suspicion. Here the record is clear that elopement procedures are mandated upon even a rumor of potential elopement, and that record and the finding of respondent clearly reflects that Turner's information met at least that level.

The decision of the PAB was contrary to the facts found by it and constituted a misapplication of the law.

The judgment of the trial court is reversed and the cause remanded with directions to remand to the Personnel Advisory Board directing it to set aside its decision and order reinstating Turner with back pay.

KAROHL, P.J., and KELLY, J., concur.